UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| GINA V. BURT, | ) |
| | ) |
|   *Plaintiff,* | ) |
| | ) Case No. 4:23-cv-55 |
| v. | ) |
| | ) Judge Curtis L. Collier |
| PLAYTIKA, LTD. and PLAYTIKA | ) |
| HOLDING CORP., | ) |
| | ) Magistrate Judge Susan K. Lee |
|   *Defendants.* | ) |
| | ) |

| | |
|---|---|
| SANDRA TUCKER DUCKWORTH, | ) |
| | ) |
|   *Plaintiff,* | ) Case No. 4:23-cv-56 |
| | ) |
| v. | ) Judge Curtis L. Collier |
| | ) |
| PLAYSTUDIOS US, LLC, | ) Magistrate Judge Susan K. Lee |
| | ) |
|   *Defendant.* | ) |
| | ) |

| | |
|---|---|
| SANDRA TUCKER DUCKWORTH, | ) |
| | ) |
|   *Plaintiff,* | ) Case No. 4:23-cv-58 |
| | ) |
| v. | ) Judge Curtis L. Collier |
| | ) |
| YELLOW SOCIAL INTERACTIVE, LTD., | ) Magistrate Judge Susan K. Lee |
| | ) |
|   *Defendant.* | ) |
| | ) |

| | |
|---|---|
| LAUREN EWING, | |
|    *Plaintiff,* | Case No. 4:23-cv-60 |
| v. | Judge Curtis L. Collier |
| SCIPLAY CORP. and SCIPLAY GAMES, LLC, | Magistrate Judge Susan K. Lee |
|    *Defendants.* | |
| JENNIFER LYNN BEAN | |
|    *Plaintiff,* | Case No. 4:23-cv-61 |
| v. | Judge Curtis L. Collier |
| ARISTOCRAT LEISURE, LLC, ARISTOCRAT TECHNOLOGIES, INC., and PRODUCT MADNESS, INC., | Magistrate Judge Susan K. Lee |
|    *Defendants.* | |
| LAUREN EWING, | |
|    *Plaintiff,* | Case No. 4:23-cv-62 |
| v. | Judge Curtis L. Collier |
| VGW LTD., VGW HOLDINGS US, INC., VGW US INC., and VGW LUCKYLAND INC., | Magistrate Judge Susan K. Lee |
|    *Defendants.* | |

| | |
|---|---|
| KAREN S. PLESS, | ) |
|    *Plaintiff,* | ) Case No. 4:23-cv-64 |
| v. | ) Judge Curtis L. Collier |
| HUUUGE, INC. and HUUUGE GLOBAL LTD., | ) Magistrate Judge Susan K. Lee |
|    *Defendants.* | ) |

| | |
|---|---|
| GINA V. BURT, | ) |
|    *Plaintiff,* | ) Case No. 4:24-cv-5 |
| v. | ) Judge Curtis L. Collier |
| DOUBLEDOWN INTERACTIVE, LLC, | ) Magistrate Judge Susan K. Lee |
|    *Defendant.* | ) |

| | |
|---|---|
| JENNIFER LYNN BEAN, | ) |
|    *Plaintiff,* | ) Case No. 4:24-cv-7 |
| v. | ) Judge Curtis L. Collier |
| SPINX GAMES, LTD., | ) Magistrate Judge Susan K. Lee |
|    *Defendant.* | ) |

## M E M O R A N D U M

Before the Court are motions filed by the sole Plaintiff in each of these nine related cases to remand these actions to the Circuit Court for Coffee County, Tennessee (the "State Court").[1]

---

[1] Given the strong similarities between the cases and the overlap of the parties' arguments, the Court addresses the cases together. For clarity, "Plaintiffs" and "Defendants" refer to parties

3

(Case No. 4:23-cv-55, Doc. 18; Case No. 4:23-cv-56, Doc. 31; Case No. 4:23-cv-58, Doc. 22; Case No. 4:23-cv-60, Doc. 20; Case No. 4:23-cv-61, Doc. 19; Case No. 4:23-cv-62, Doc. 18; Case No. 4:23-cv-64, Doc. 17; Case No. 4:24-cv-5, Doc. 19; Case No. 4:24-cv-7, Doc. 27.) Plaintiffs argue this Court lacks subject-matter jurisdiction over the cases. (*Id.*) Defendants in seven of the cases filed a joint response in opposition to Plaintiffs' motions to remand (Case No. 4:23-cv-55, Doc. 26; Case No. 4:23-cv-56, Doc. 44; Case No. 4:23-cv-58, Doc. 31; Case No. 4:23-cv-60, Doc. 32; Case No. 4:23-cv-61, Doc. 28; Case No. 4:23-cv-62, Doc. 26; and Case No. 4:23-cv-64, Doc. 23) and one Defendant who was not party to the joint filing expressly stated in its own response that it joined the joint filing (Case No. 4:24-cv-5, Doc. 21 at 1). The ninth Defendant responded in opposition separately. (Case No. 4:24-cv-7, Doc. 34.) Plaintiffs in eight of the cases replied. (Case No. 4:23-cv-55, Doc. 28; Case No. 4:23-cv-56, Doc. 46; Case No. 4:23-cv-58, Doc. 34; Case No. 4:23-cv-60, Doc. 35; Case No. 4:23-cv-61, Doc. 30; Case No. 4:23-cv-62, Doc. 28; Case No. 4:23-cv-64, Doc. 25; and Case No. 4:24-cv-5, Doc. 22.)

Plaintiffs brought actions in Tennessee state court seeking to recover gambling losses of Tennessee residents pursuant to Tennessee Code Annotated § 29-19-105. (*E.g.*, Case No. 4:23-cv-55, Doc. 1-1 at 2–13.) Defendants timely removed the actions from the State Court under 28 U.S.C. § 1332(a), stating the amount in controversy exceeds $75,000 and this Court has traditional diversity jurisdiction. (*E.g.*, Case No. 4:23-cv-55, Doc. 1); *see* 28 U.S.C. § 1446(b)(1). Defendants in six of the cases also rely on 28 U.S.C. § 1332(d) as a basis for removal, arguing this Court has subject-matter jurisdiction under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005) ("CAFA"). (Case No. 4:23-cv-55, Doc. 1 ¶ 10; Case No. 4:23-cv-58, Doc. 1 ¶ 11;

---

in more than one, but not necessarily all, of the nine related case. Relevant differences between cases are noted.

Case No. 4:23-cv-60, Doc. 1 ¶ 14; Case No. 4:23-cv-61, Doc. 1 ¶ 26; Case No. 4:23-cv-62, Doc. 1 ¶ 10; Case No. 4:24-cv-7, Doc. 1 ¶ 8.) Plaintiffs now move to remand the actions to the State Court. (*E.g.*, Case No. 4:23-cv-55, Doc. 18.)

For the reasons below, the Court will **GRANT** Plaintiffs' motions (Case No. 4:23-cv-55, Doc. 18; Case No. 4:23-cv-56, Doc. 31; Case No. 4:23-cv-58, Doc. 22; Case No. 4:23-cv-60, Doc. 20; Case No. 4:23-cv-61, Doc. 19; Case No. 4:23-cv-62, Doc. 18; Case No. 4:23-cv-64, Doc. 17; Case No. 4:24-cv-5, Doc. 19; Case No. 4:24-cv-7, Doc. 27) and **REMAND** the actions to the State Court.

I. **BACKGROUND**

A. **Statutory Framework**

In Tennessee, there exists a civil cause of action to recover money paid and lost in gambling endeavors. "Any person who has paid any money, or delivered anything of value, lost upon any game or wager, may recover such money, thing, or its value, by action commenced within ninety (90) days from the time of such payment or delivery." Tenn. Code Ann. § 29-19-104. Additionally,

> Any other person may, after the expiration of the ninety (90) days, and within twelve (12) months thereafter, recover the amount of such money, thing, or its value, by action for the use of the spouse; or, if no spouse, the child or children; and, if no child or children, the next of kin of the loser.

Tenn. Code Ann. § 29-19-105 (the "Gambling Statute").

B. **Factual and Procedural History**

The parties represent that all Plaintiffs and none of the Defendants are Tennessee citizens. (*E.g.*, Case No. 4:23-cv-55, Doc. 1 ¶ 25.) Defendants are companies in the social gaming industry and make available games that can be played online or on cellphone applications. (*E.g.*, Case No. 4:23-cv-55, Doc. 1-1 ¶ 13.) The games include those involving virtual slot machines, casino-style

5

Case 4:23-cv-00061-CLC-SKL   Document 36   Filed 09/26/24   Page 5 of 20   PageID #: 415

games, card games, and other games of chance. (*E.g.*, *id.* ¶ 14.) In such games of chance, a customer initially receives free virtual coins that he can spend to play the game. (*E.g.*, *id.* ¶ 15.) If the player wins, he receives more coins; if he loses, he loses the coins wagered. (*E.g.*, *id.*) When the player runs out of coins entirely, he can either stop playing the game or spend real money to purchase coins and continue playing. (*E.g.*, *id.*) The games at issue in two of the cases also offer "sweepstakes coins," which are awarded based on frequency of play, and can be exchanged for real money. (Case No. 4:23-cv-58, Doc. 1-1 ¶ 15; Case No. 4:23-cv-62, Doc. 1-1 ¶ 16.) Many Tennessee residents play Defendants' games of chance and have purchased additional playing time. (*E.g.*, Case No. 4:23-cv-55, Doc. 1-1 ¶ 16, Doc. 1-2 ¶ 5.)

Plaintiffs filed actions under the Gambling Statute seeking to recover the money up to, but not including, $75,000 lost by each Tennessee resident on Defendants' games of chance beginning the date one year before the case was filed on behalf of the families of those individuals. (*E.g.*, Case No. 4:23-cv-55, Doc. 1-1 at 13.) Plaintiffs do not seek punitive damages. (*E.g.*, *id.* at 12–13.) Defendants removed the actions on the grounds that this Court has original jurisdiction based on traditional diversity of citizenship, and in some cases alternatively under CAFA,[2] pursuant to 28 U.S.C. §§ 1332(a) and 1332(d), respectively. (*E.g.*, Case No. 4:23-cv-55, Doc. 1 ¶¶ 9–10.)

Among the six cases in which Defendants argue there is jurisdiction under CAFA, Defendants in all but one filed declarations stating that over the relevant time period more than one hundred Tennessee residents spent money on Defendants' games of chance and their collective spending exceeded five million dollars. (Case No. 4:23-cv-55, Doc 1-2 ¶ 5; Case No. 4:23-cv-58, Doc.1-2 ¶¶ 7–8; Case No. 4:23-cv-60, Doc. 1-3 ¶¶ 5–6; Case No. 4:23-cv-62, Doc. 1-2 ¶ 6; Case

---

[2] As noted above, Defendants in three cases did not remove on CAFA grounds and argue for removal only based on traditional diversity jurisdiction under 28 U.S.C. § 1332(a).

6

No. 4:24-cv-7, Doc. 1-2 ¶¶ 5–6.) The declarations in all those cases except one, *Ewing v. SciPlay Corporation*, Case No. 4:23-cv-60, specify that the figures exclude players who spent $75,000 or more over the relevant time period. (*Id.*) Defendants in *Ewing v. SciPlay Corporation*, state they received more than six million dollars in gross revenue from the over twenty thousand Tennessee players who played their games over the relevant time period. (Case No. 4:23-cv-60, Doc. 1-3 ¶¶ 5–6.)

Defendants in the three cases that do not cite CAFA as a basis for jurisdiction represent that Tennessee residents spent more than $75,000 on their games of chance over the relevant time period. (Case No. 4:23-cv-56, Doc. 1-2 ¶ 6 (declaration states collective spending exceeded five hundred million dollars, but does not specify whether this excludes those who spent more than $75,000); Case No. 4:23-cv-61, Doc. 1 ¶ 19 (notice of removal states spending exceeded five million dollars, excluding players who spent more than $75,000); Case No. 4:23-cv-64, Doc. 1-2 ¶ 4 (declaration states collective spending exceeded five hundred million dollars, excluding players who spent more than $75,000)).

## II.   **STANDARD OF REVIEW**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see* 28 U.S.C. § 1447. As the parties seeking removal, Defendants bear the burden of establishing the existence of subject-matter jurisdiction. *Kokkonen*, 511 U.S. at 377; *Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476, 478 (6th Cir. 2014).

Federal courts have original jurisdiction under 28 U.S.C. § 1332(a) where (1) there is complete diversity of citizenship between the plaintiffs and the defendants and (2) the amount in

controversy is greater than $75,000, exclusive of interest and costs. Under CAFA, federal courts have original jurisdiction over class actions where the parties are minimally diverse, the amount in controversy exceeds five million dollars, exclusive of interest and costs, and the proposed class is at least one hundred members. *Id*. § 1332(d); *Miss. ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014). "Normally, 'the sum claimed by the plaintiff[s] controls,' . . . but where plaintiffs seek 'to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement,' the defendant satisfies its burden when it proves" by a preponderance of the evidence that the amount in controversy fulfills the jurisdictional requirement. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 156, 158 (6th Cir. 1993) (abrogated on other grounds). "[C]ourts may use their judicial experience and common sense" to determine whether the removing defendants have met their burden. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010); *see Naji v. Lincoln*, 665 F. App'x 397, 402 n.2 (6th Cir. 2016).

"Generally, 'statutory procedures for removal are to be strictly construed,' . . . such that '[a]ll doubts as to the propriety of removal are resolved in favor of remand.'" *Nessel ex rel. Mich. v. Amerigas Partners, L.P.*, 954 F.3d 831, 834 (6th Cir. 2020) (quoting *Syngenta Crop Prot., nc. v. Henson*, 537 U.S. 28, 32 (2002); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)). "However, 'no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.'" *Id*. (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)).

### III. DISCUSSION

The parties in each case agree there is complete diversity between the parties. (*See, e.g.*, Case No. 4:23-cv-55, Doc. 1-1 ¶¶ 10–12, Doc. 26 at 10.) Plaintiffs do not dispute Defendants'

factual assertions regarding the amount Tennessee residents collectively spent playing Defendants' games of chance during the relevant timeframes. (*See generally, e.g.,* Case No. 4:23-cv-55, Docs. 18, 28.) Defendants do not argue the cases against them are mass actions. (*See generally, e.g.,* Case No. 4:23-cv-55, Docs. 1, 26); *see also* 28 U.S.C. 1332(11)(B)(i) ("'mass action' means any civil action . . . in which monetary relief claims of [one hundred] or more persons are proposed to be tried jointly . . .").

There are thus two issues before the Court: (1) whether the amount in controversy exceeds $75,000 under 28 U.S.C. § 1332(a); and (2) whether the actions are class actions under CAFA in which the amount in controversy exceeds $5,000,000 and the proposed class includes more than one hundred plaintiffs under 28 U.S.C. § 1332(d). The Court addresses each in turn.

### A. Traditional Diversity Jurisdiction

Plaintiffs argue the amount in controversy does not exceed $75,000 because the claims they assert for the benefit of the family of each Tennessee resident who lost money playing Defendants' games cannot be aggregated. (*E.g.*, Case No. 4:23-cv-55, Doc. 18 at 4–5, 19–20.) They maintain the Gambling Statute creates a type of private attorney-general action which precludes aggregation of claims to calculate the amount in controversy. (*Id*. at 5.) Defendants argue Plaintiffs assert first-party rather than third-party legal rights, and because each case is brought by a single Plaintiff with a single, undivided claim for recovery, their claims can be aggregated. (E.g., Case No. 4:23-cv-55, Doc. 26 at 11–18.)

The nature of the pending claims is unusual in that in each case a sole Plaintiff appears in a representative capacity to recover for the family of numerous, and currently unknown, Tennessee residents. Plaintiffs' motions to remand turn on whether, for the purposes of determining whether

9

the amount in controversy requirement has been satisfied, the Court can aggregate the individual monies lost by each gambler during the relevant time period, up to, but not including, $75,000.

### 1. Non-Aggregation Doctrine

"Under the non-aggregation doctrine, 'separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement' for the purposes of diversity jurisdiction." *Rice v. Aristocrat Leisure, Ltd.*, No. 3:23-cv-00480-LCB, 2023 U.S. Dist. LEXIS 140373, at *8 (N.D. Ala. Aug. 11, 2023) (quoting *Snyder v. Harris*, 394 U.S. 332, 335 (1969) (superseded by statute on other grounds)). The doctrine is based on the "Supreme Court's interpretation of the statutory phrase 'matter in controversy.'" *Snyder*, 394 U.S. at 336. "Aggregation has been permitted only (1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Id*. at 335. With regard to the latter, federal courts may rely on the aggregated amount only when "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Id*.; *see also Oliver v. Alexander*, 31 U.S. 143 (1832) (disallowing aggregation of claims to establish federal jurisdiction by plaintiffs with separate and distinct claims under the same contract). Even when plaintiffs share a common interest in a constructive trust, their interest is not undivided and does not establish that their claims stem from a single title or right. *Everett*, 460 F.3d at 824. The Supreme Court has consistently upheld the non-aggregation doctrine even since the creation of the modern class action. *See id*. at 823; *Snyder*, 394 U.S. at 335.

A district court in Alabama recently addressed an amount-in-controversy issue nearly identical to the one before the Court. *See Rice*, No. 3:23-cv-00480-LCB, 2023 U.S. Dist. LEXIS

10

140373.  There, like here, the statute at issue allowed "[a]ny person" to recover money "for the use of" the wife or children or the next of kin of an individual who had lost money gambling. *See Rice*, No. 3:23-cv-00480-LCB, 2023 U.S. Dist. LEXIS 140373 at *2–3; *compare* Ala. Code § 8-1-15(a)–(b) *with* Tenn. Code Ann. § 29-19-105.  The plaintiff sued on behalf of the families of all Alabama citizens who had lost money playing the defendant's games of chance. *Id*. at 4.  The district court relied on cases from the District Court for the District of Columbia and the Court of Appeals for the Ninth Circuit where a single plaintiff sought to recover for numerous individuals in a representative capacity in a private attorney-general action. *Id*. at *7.  In those opinions, the courts relied upon the non-aggregation doctrine to determine whether the amount-in-controversy threshold was satisfied.  *Id*. at *7–8; *Breakman v. AOL LLC*, 545 F. Supp. 2d 96 (D.D.C. 2008) (claim remanded because separate and distinct claims asserted on behalf of a number of individuals cannot be aggregated); *Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26 (D.D.C. 2014) ("so long as individual consumers are eligible to recover individual damages, the consumers do not have a 'common and undivided interest' that may be aggregated under the non-aggregation principal announced in *Snyder*"); *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118 (9th Cir. 2013) (non-aggregation doctrine applied to private attorney-general action because the defendant's legal obligations to the parties plaintiff represented were several, not joint)*; contra, In re Folgers Coffee*, No. 21-2984-MD-W-BP, 2021 U.S. Dist. LEXIS 214917 (W.D. Mo. Aug. 19, 2021) (in private attorney-general action, court applied the damages payable directly to plaintiff, attorney fees, and cost of injunction to amount-in-controversy calculation rather than allocating fees and costs equally to the plaintiff and all represented parties).

While the court in *Rice* found the Alabama statute did not create a private attorney-general action, it held that "at the macro level, the framework of the actions is identical: there is a single

plaintiff acting in a representative capacity to recover damages that would be payable to non-parties." *Rice*, No. 3:23-cv-00480-LCB, 2023 U.S. Dist. LEXIS 140373 at *12. Accordingly, the court held the doctrine of non-aggregation applied, and that in seeking to recover on behalf of the family members of those who lost money gambling, the plaintiff asserted "numerous individual claims" that did "not share a common and undivided interest." *Id*. at *14. The court held the amount-in-controversy threshold was not met because the non-aggregation doctrine precluded aggregation of the plaintiff's claims for calculation of the amount in controversy. *Id*. at *7–8, 14.

The Gambling Statute, like the Alabama statute at issue in *Rice*, allows a single plaintiff "to recover damages that would be payable to non-parties" for the use of those parties. *Rice*, No. 3:23-cv-00480-LCB, 2023 U.S. Dist. LEXIS 140373 at *12. The Tennessee statute creates a representative action, even though it does not create a typical private attorney-general action in that the statute does not expressly authorize an action on behalf of the general public. Unlike the statute at issue in *Folgers*, which provided for attorney fees and equitable relief, the Gambling Statute allows for only compensatory damages. *See In re Folgers Coffee, Mktg. Litig.*, No. 21-2984-MD-W-BP, 2021 U.S. Dist. LEXIS 214917, at *5, 16; *compare* Tenn. Code Ann. § 29-19-105 *with* D.C. Code § 28-3905(k)(2). Regardless of whether the Gambling Statute creates what can be characterized as a private attorney-general action, the non-aggregation doctrine applies in all cases unless a single plaintiff seeks to aggregate claims against a single defendant, or two or more plaintiffs seek recovery in which they have a common and undivided interest. *See Snyder*, 394 U.S. at 335. Accordingly, the Court turns next to consider Plaintiffs' personal pecuniary interest in the pending actions, and whether their claims can be aggregated.

12

### 2. Representative-Capacity Actions

The Court notes the dearth of case law specifically interpreting the Gambling Statute, but finds Tennessee law governing the right of action in a wrongful-death case instructive, as there too a personal representative may bring a claim for the use of statutory beneficiaries. *See* Tenn. Code Ann. § 20-5-106. Under Tennessee law, a decedent's right of action in a wrongful-death case passes "to the person's surviving spouse . . . to the person's children or next of kin; [or] to the person's personal representative, for the benefit of the person's surviving spouse or next of kin . . . ." Tenn. Code Ann. § 20-5-106. Where a personal representative brings the wrongful death action, "[t]he one who sues as administrator and recovers damages for the wrongful death of the decedent holds this recovery as a trustee for the real beneficiaries under the statute, and must account to them, whoever they may be, for the proceeds of the judgment." *Memphis S. R. Co. v. Cooper*, 313 S.W.2d 444, 448 (1958) (citations omitted). Such representative "is without any pecuniary interest and the recovery, if any, passes to the statutory beneficiary free from the claims of creditors of the estate." *Memphis St. Ry. Co.*, 313 S.W.2d at 448. "The statutory beneficiary is the real party in interest." *Id*. (citing *Whitson v. Tenn. Cent. Ry. Co.*, 40 S.W.2d 396, 398 (1931)).

The legal framework of the Gambling Statute is similar to Tennessee's wrongful-death statutes in that it provides a single plaintiff a cause of action in a representative capacity to recover damages on behalf of statutory beneficiaries. The Gambling Statute is silent on the mechanism by which recovered money is provided "for the use of" the spouse, child, or next of kin of the person who lost money gambling. *See* Tenn. Code. Ann. § 29-19-105. But applying the principles of representative recovery from the wrongful-death statutes, the Court finds that regardless of whether a plaintiff becomes a trustee of funds for the benefit of others, the Gambling Statute does

13

not give Plaintiffs a pecuniary interest in the recovery. *See Memphis St. Ry. Co.*, 313 S.W.2d at 448.

The statute also does not, as Defendants argue, create a two-step process in which Plaintiffs first recover funds, then must make the funds available to the correct family members such that Plaintiffs have an independent pecuniary interest in the funds recovered. (*See,* e.g., Case No. 4:23-cv-55, Doc. 26 at 15.) Rather, like actions under the wrongful-death statutes, the recovered funds belong only to the statutory beneficiaries. *See* Tenn. Code Ann. §§ 20-5-106, 29-19-105; *Memphis St. Ry. Co.*, 313 S.W.2d at 448. Each family member entitled to recovery holds an individual interest in the money recovered on his or her behalf. That interest is not an undivided, common interest with the Plaintiff or any other family member of a Tennessee resident who lost money playing Defendants' games. *See Snyder*, 394 U.S. at 335; *Everett*, 460 F.3d at 822. Accordingly, applying the non-aggregation doctrine, the Court finds Plaintiffs' numerous individual claims cannot be aggregated to determine the amount in controversy.

### 3. Other State Gambling Statutes

Defendants cite several cases for the proposition that courts apply the typical amount-in-controversy analysis rather than the non-aggregation doctrine to actions under anti-gambling statutes, even when a plaintiff seeks recovery of funds lost by others. (*E.g.*, Case No. 4:23-cv-55, Doc. 26 at 17.) But the statutes at issue in the cases Defendants cite expressly allow a plaintiff to recover a portion of the funds recovered for another party, or to recover on the plaintiff's own behalf. *See, e.g.*, *Ky. ex rel. Brown v. Pocket Kings, Ltd.*, No. 14-27-GFVT, 2015 U.S. Dist. LEXIS 41465, at *5 n.2 (E.D. Ky. Mar. 31, 2015) (amount in controversy was not in dispute where the plaintiff sued under a statute that created cause of action for any person to personally recover treble damages for gambling losses of another person); *Vinson v. Casino Queen*, 123 F.3d 655 (7th Cir.

14

1997) (court did not question jurisdiction where plaintiff sued under a statute creating a civil cause of action for any person to recover treble damages for gambling losses of another person); *Humphrey v. Viacom, Inc.*, No. 06-2768 (DMC), 2007 U.S. Dist. LEXIS 44679, at *5, 17–18 (D.N.J. June 19, 2007) (court did not question amount in controversy where plaintiff sought recovery under the *qui tam* laws of eight states allowing a plaintiff to personally recover the gambling losses of another person).

The Gambling Statute, by contrast, creates a cause of action that may be asserted by "any other person" "by action for the use of" the spouse, children, or next of kin of the person who lost money gambling. The Court does not find persuasive Defendants' argument that traditional amount-in-controversy analysis applies to the pending claims under the Gambling Statute because the statute does not expressly create a cause of action for Plaintiffs to personally recover.

### 4.     Recovery of Unclaimed Funds

The Court turns finally to Defendants' argument that Plaintiffs will personally recover more than $75,000 because the statute is silent on who receives the money for a player's family who cannot be identified or does not claim their funds. (*E.g.*, Case No. 4:23-cv-55, Doc. 1 at 5–6.) The Plaintiff in each case will almost certainly assert an interest in unclaimed recovered funds. But there is no reliable way to determine the amount of such hypothetical unclaimed funds. It is also unclear that the amount of unclaimed funds is relevant to the amount in controversy analysis, as a suit "for the use of" the beneficiary does not itself necessarily grant Plaintiff a personal pecuniary interest in the recovered funds. The Court declines to assert jurisdiction based on speculation that the unrecovered funds may, in aggregate, total more than $75,000, and could ultimately accrue to Plaintiffs.

In the context of traditional diversity jurisdiction "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493. Accordingly, the Court declines to assert traditional diversity jurisdiction in this case.

### B. Class Action Fairness Act

Plaintiffs also move for remand to State Court on the ground that the cases are not class actions under CAFA. (*E.g.*, Case No. 4:23-cv-55, Doc. 18 at 9–18.) Plaintiffs argue that the Gambling Statute fails to meet the requirements of numerosity, commonality, typicality, and adequate representation for a claim under the statute to constitute a class action. (*Id*. at 3.) The Defendants that cite CAFA as a basis for removal argue that because the action is a class action in substance it fulfills the statutory requirements of CAFA, and litigating this case in federal court promotes CAFA's overall purpose. (*E.g.*, Case No. 4:23-cv-55, Doc. 26 at 10–11.)

"Congress through CAFA sought to relax the requirements of diversity jurisdiction in order to make it easier for plaintiffs to bring certain interstate class actions and mass actions in federal court." *Nessel ex rel. Mich.*, 954 F.3d at 834 (citations omitted). Under CAFA, a federal court has original jurisdiction over a class action in which (1) there is minimal diversity of citizenship between the parties; (2) the aggregate amount in controversy exceeds five million dollars; and (3) the proposed class is at least one hundred members. 28 U.S.C. § 1332(d)(1), (2), and (5).

CAFA defines a "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). "Rule 23 specifies four prerequisites that must be satisfied before a member of a class may sue or be sued as a representative party." *Nessel ex rel. Mich.* 954 F.3d at 835. First, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Second, there

must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Third, the claims or defenses of the representative party must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Last, the representative party must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "These four requirements—numerosity, commonality, typicality, and adequate representation—are the defining characteristics of Rule 23." *Nessel ex rel. Mich.* 954 F.3d at 835. "[U]nder CAFA, removal jurisdiction exists only when a class action is brought pursuant to Rule 23 itself or a 'similar' state statute. *Id*. (citing 28 U.S.C. § 1332(d)(1)(B)).

With regard to numerosity, "[t]here is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted). "Rather, 'the numerosity requirement requires examination of the specific facts of each case.'" *Id*. (quoting *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980)). "The commonality requirement is interdependent with the impracticability of joinder requirement." *Id*. at 1080. "The commonality test "is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *Id*. The Court of Appeals for the Sixth Circuit has stated that "it is unclear how the requirements of numerosity and commonality could ever be satisfied" in a lawsuit in which a single plaintiff brings suit on behalf of others when the plaintiff is not a representative member of the class. *Nessel ex rel. Mich.*, 954 F.3d at 836.

Typicality requires that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216; citations omitted). In the context of a state attorney-general representative action, the Court of Appeals has held that a statute that does not require the attorney-general to

17

have suffered the same harm as proposed class members fails to meet the typicality requirement. *Nessel ex rel. Mich.*, 954 F.3d at 835.

Adequate representation requires two criteria: (1) the representative has common interests with unnamed members of the class; and (2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. GMC*, 532 F.2d 511, 524–25 (6th Cir. 1976) (citations omitted). "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *In re Am. Med. Sys.*, 75 F.3d at 1083. In the context of a state attorney-general action, the Court of Appeals has found that just because the statute at issue authorizes an attorney-general to seek damages on behalf of others allegedly harmed does not mean the requirement of adequate representation is fulfilled where the attorney-general was not a member of the class, did not assert claims typical of the class, and had not suffered harm by the defendants. *Nessel ex rel. Mich.*, 954 F.3d at 835.

Here, because Plaintiffs brought cases under state law, the Court considers whether they are class actions brought under a state statute similar to Rule 23. *See Nessel ex rel. Mich.* 954 F.3d at 835. The Gambling Statute creates a cause of action by a plaintiff on behalf of another party. The statute does not require plaintiffs to "be part of the class and possess the same interest and suffer the same injury as the class members." *See, E.g.*, *Tex. Motor Freight Sys., Inc.*, 431 at 403. To the contrary, it expressly authorizes "any person" to make a claim on behalf of the family of a person who lost money gambling. Tenn. Code Ann. § 29-19-105. The requirement of typicality is therefore not satisfied. For the same reasons, and because none of the Plaintiffs in the nine pending cases alleges they have a claim to recover money lost by a family member who spent money on Defendants' games of chance, the requirement of adequate representation is also not

18

met.  *See In re Am. Med. Sys.*, 75 F.3d at 1083; *Senter v. GMC*, 532 F.2d 511, 524–25 (6th Cir. 1976).  Finally, because there is only one Plaintiff in each case and that Plaintiff is not a representative member of the class, the requirements of numerosity and commonality are not fulfilled.  *See Nessel ex rel. Mich.*, 954 F.3d at 836.

Because the Court finds the pending cases do not meet the four prerequisites of Rule 23, the Court does not consider whether the elements of class size and amount in controversy are met in the cases in which Defendants argued CAFA as a basis for removal.  (*See* Case No. 4:23-cv-60, Doc. 1-3 at 2 (Defendants do not specify whether the revenue and number-of-player figures exclude players who spent $75,000 or more over the relevant time period.)).  Plaintiffs' claims are not class actions, and this Court does not have jurisdiction under CAFA.

## IV.  CONCLUSION

Under the non-aggregation doctrine, and resolving all doubts in favor of remand, aggregation of individual claims in these matters would be improper.  *See Snyder*, 394 U.S. at 335; *Nessel el rel. Mich*, 954 F.3d at 834.  As such, the amount in controversy threshold has not been met, and this Court does not have traditional diversity jurisdiction over the actions under 28 U.S.C. § 1332(a).  Plaintiffs' claims are not class actions, and this Court does not have jurisdiction over these cases under CAFA.  *See* 28 U.S.C. § 1332(d).

Accordingly, the Court will **GRANT** Plaintiffs' motions to remand (Case No. 4:23-cv-55, Doc. 18; Case No. 4:23-cv-56, Doc. 31; Case No. 4:23-cv-58, Doc. 22; Case No. 4:23-cv-60, Doc. 20; Case No. 4:23-cv-61, Doc. 19; Case No. 4:23-cv-62, Doc. 18; Case No. 4:23-cv-64, Doc. 17; Case No. 4:24-cv-5, Doc. 19; Case No. 4:24-cv-7, Doc. 27).  The cases will be **REMANDED** to the State Court.

**APPROPRIATE ORDERS WILL ENTER.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**